## Southern Coal & Coke Company v. Bowling Green Coal Company.

(Decided December 9, 1914.)

### Appeal from Warren Circuit Court.

1   Contracts—Acceptance.—A written order taken by a salesman in one place, subject to the acceptance of the salesman's employer at another place, is not a complete contract and does not become binding upon any of the parties until so accepted.

2.   Contracts—Sale and Delivery of Coal—Place of Performance of Contract.—Where coal is contracted to be delivered and is sold f. o. b. cars at point of shipment, the coal becomes the property of the purchaser when delivered on the cars at the point of shipment, and the contract is not to be performed at the place of residence of the consignee.

3.   Jurisdiction.—Where the lower court overrules a plea to the jurisdiction by the defendant and a judgment is rendered against it, from which an appeal is taken to this court, where the judgment is reversed on the question of jurisdiction, upon the return of the case the lower court will have jurisdiction to determine all questions.

4.   Contracts—Shipment of Coal.—Under the terms of a contract for the shipment of coal, so many cars to be shipped each month during a period of several months, wherein it is provided that a failure to pay on the 10th of the month immediately following the month in which shipment is made, will authorize the shipper to cancel all future shipments under the contract, and the first shipment was not paid for within the prescribed time and the shipper promptly notified the purchaser that it would refuse to make future shipments under the contract, it was within its express contract rights; and it matters not what motive may have actuated it in so refusing.

T. W. and R. C. P. THOMAS for appellant.

GUY H. HERDMAN for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

Appellant is a Kentucky corporation, having its chief office and place of business at Williamsburg, Ky., but it also has an office at Knoxville, Tennessee.

In June, 1908, appellant's traveling salesman, Barker, took from Mercer and Irving, doing business as the Bowling Green Coal Company, at Bowling Green, Kentucky, an order for 26 carloads of coal to be delivered to appellee as follows: Two carloads in August, 1911, and four carloads to be delivered in each of the succeeding months up to and including February, 1912.

It was a written order and was taken "subject to the acceptance of the Southern Coal & Coke Company at its office in Knoxville, Tennessee," and also provided that "all coal is sold f. o. b. cars at point of shipment." It was further provided in the order that "a failure to pay when due any account for coal shipped under this order renders this order, as to all further shipments, subject to cancellation at any time thereafter, at the option of the shipper. All coal shall be paid for on the 10th of the month immediately following the month in which shipment is made."

The appellant promptly accepted the order at its Knoxville office, and in August shipped two carloads of coal, which, under its terms, were to be shipped that month.

Between the date of the contract and the shipment of the coal in August, Mercer retired from the firm and Irving became the sole proprietor of the Bowling Green Coal Company.

On the 11th of September Irving mailed from Bowling Green a check for the amount of the two cars shipped to him in August, which was, presumably, received by appellant at Knoxville on the 12th or 13th of September. On the 15th of September, the appellant, in a letter, notified Irving that it did not feel justified in making additional shipments of coal in view of its past unsatisfactory experience with his firm, and in view of its failure to show an intention to meet the regular terms of payment.

This action was instituted by Irving in the name of the Bowling Green Coal Company, claiming damages for the alleged breach of the contract to deliver the remaining cars of coal. A process was issued and served upon appellant in Whitley county, Kentucky, it having no place of business or agent in Warren county.

The first contention of appellant is that the Warren Circuit Court had no jurisdiction, and this question was raised in the lower court by motion to quash the summons, demurrer to the jurisdiction, and plea to the jurisdiction in the proper form, all of which were overruled by the lower court. Thereupon appellant, under protest, filed its answer to the merits.

Section 72 of the Civil Code provides (with certain exceptions not here involved) that "an action against a corporation which has an office or place of business in this State, or a chief officer or agent residing in this State, must be brought in the county in which such office or place of business is situated, or in which such officer or agent resides; or, if it be upon a contract, in the above named county, or in the county in which the contract is made or to be performed."

Clearly the contract was not made in Warren county; by the very terms of the order given by appellee to appellant's salesman it was to become effective only when accepted by appellant at its Knoxville office; until . it was so accepted it was binding upon neither party as there had been no meeting of the minds until that time; until then it was nothing more nor less than a written proposal by appellee to purchase from appellant so many carloads of coal, at a stated price to be delivered at stated times.

Nor was the contract, or any part of it, to be performed in Warren county; under its express terms the coal was sold f. o. b. cars at point of shipment, which was at the mines of appellant, none of which were in Warren county. It would be unprofitable to cite authorities to the effect that the coal, when delivered on the cars at the mines and consigned to appellee at Bowling Green, became the property of appellee, and, therefore, the delivery was to be at the mines and not at Bowling Green. It is perfectly apparent that no part of this contract was to be performed in Warren county. We are, therefore, of opinion that the court should have sustained the plea to the jurisdiction.

But, adhering to the former rulings of this court, we are constrained to hold that, upon the return of the case, the court will have jurisdiction to determine the whole case. Foster-Milburn Co. v. Chinn, 137 Ky., 834; Job Iron & Steel Co. v. Clark, 150 Ky., 246.

The only remaining question which we deem it necessary to pass upon is, whether the court should have directed a verdict for the defendant, as requested by it. We have seen that, under the express terms of the contract, for a breach of which appellee is suing, appellant reserved the right to cancel the same as to all further shipments of coal where the coal already shipped had not been paid for on the 10th of the succeeding month. Appellee's own evidence shows that he did not even mail a check for the August shipment until the 11th of September, and appellant, very promptly thereafter, by its letter of the 15th of September, notified him that it would decline to make further shipments. Whether that action was taken alone because of his delay in paying for the August shipment, or whether it was taken for other reasons, or for that reason combined with others, cannot be considered. It was acting within its express rights reserved in the contract, and courts are not authorized in such cases to inquire into its motives.

As appellant, in refusing to make further shipments, was well within its contract rights, we are of opinion that the lower court should have sustained the motion for a peremptory instruction.

The judgment is reversed with directions to grant appellant a new trial and for further proceedings consistent herewith.